# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

*vs*.                                      **CRIMINAL ACTION NO. 2:05CR19-2**

**DONALD DEWAYNE BOWMAN,**

    **Defendant.**

## ORDER/REPORT AND RECOMMENDATION/OPINION

On the 13th day of September, 2005, came the defendant, Donald Dewayne Bowman, through counsel, Harry A. Smith, III, and also came the United States by its Assistant United States Attorney, Stephen Warner, for a hearing on defendant's Motion for a Bill of Particulars [Docket Entry 62] and Motions to Suppress all evidence seized pursuant to searches of Defendant's vehicle conducted March 18, 2005, and April 17, 2005 [Docket Entry 63], which motions were filed on August 22, 2005.

The undersigned received the testimony of Grafton City Police Lieutenant Mark McCullough; received exhibits in evidence; and heard arguments of counsel.

## Procedural History

Defendant was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on June 22, 2005. The indictment charges Defendant with Conspiracy to Manufacture and to Distribute Methamphetamine, Manufacture of Methamphetamine, and Possession of a Firearm in Furtherance of a Drug Crime [Docket Entry 1]. An arrest warrant was issued on June 22, 2005, by United States District Judge Robert E. Maxwell. Defendant was arrested on July 12, 2005, and appeared before United States Magistrate Judge John S. Kaull that same date.

### Order Denying Motion for Bill of Particulars

Defendant requested a bill of particulars providing certain information as to Count I of the Indictment. The Government responded that the information sought by Defendant was contained in the grand jury transcripts, and sought permission of the Court for early disclosure of the grand jury material. The Court GRANTED the Government's motion for early disclosure, and ordered the grand jury transcripts be made available to all Defendants in this case for review in the Unites States Attorneys' office by Thursday, September 15, 2005. Based on this Order, the Court finds Defendant's Motion for Bill of Particulars should be and hereby is **DENIED as MOOT.**

### REPORT AND RECOMMENDATION DENYING MOTIONS TO SUPPRESS

Plaintiff filed two Motions to Suppress corresponding with two searches of his vehicle. The undersigned will discuss each Motion Separately.

### Facts

The undersigned finds the following testimony and evidence credible, and therefore recommends these findings of fact. On March 18, 2005, Grafton City Police Lieutenant Mark McCullough was patrolling after dark on "Old Route 50" in Grafton, when he noticed a small pickup truck with non-functioning tail lights. He signaled for the driver of the truck to pull over, which he did without incident. Defendant was the driver and only occupant of the vehicle. Lt. McCullough asked Defendant for his drivers' license, proof of insurance, and vehicle registration. Defendant was unable to supply the registration or proof of insurance, stating he had just bought the truck and did not have them with him. Lt. McCullough noticed Defendant had "track marks" and very bad bruises on his arm, consistent with drug use. He asked Defendant about his arm, and Defendant told him he had injected methamphetamine in his arm and the arm became infected. Lt. McCullough then

2

asked Defendant if he had anything on his person or in the truck about which he should be concerned. Defendant answered that he had a small amount of marijuana on his person and possibly some in his vehicle. Lt. McCullough testified he asked Defendant if he could search the vehicle, and Defendant gave his permission.

Lt. McCullough began searching the vehicle; however, the drivers compartment was so cluttered, he only performed a quick search, finding some items he was "not used to seeing" in a vehicle, including an aquarium pump wrapped in duct tape; lithium batteries wrapped in tape; syringes; surgical scissors; spoons; and plastic medical tubing. Lt. McCullough testified he also found a pill bottle wrapped in tape that smelled of marijuana. He testified these were unusual items to find during a routine traffic stop. He was not well-trained regarding manufacture of methamphetamine. He had called for "back up" and another officer arrived. The officers suspected the items may have been involved in the manufacture of methamphetamine. He testified that neither officer had serious knowledge of meth operations, but had taken classes in which they were taught to look for certain items, such as batteries. The officers decided to seize the items already discovered and impound the vehicle. Lt. McCullough informed Defendant he would seize the items already discovered and would not search further. Instead, he would impound the vehicle and get a search warrant.

Lt. McCullough testified he impounded the vehicle because Defendant had no proof of insurance or registration, and also to get a search warrant. He contacted an undercover DEA officer, whom he did not name. The officer advised the items appeared to be evidence of methamphetamine manufacturing. He said he would assist McCullough in obtaining a search warrant, but later "got busy" and did not get back in contact with him.

3

Lt. McCullough testified that a few weeks later a WV State Trooper contacted him and informed him he would assist him in obtaining a search warrant for the vehicle. The vehicle was still impounded. No inventory had been done.

Lt. McCullough obtained a search warrant for the vehicle on April 15, 2005, from a Taylor County, WV Magistrate Judge. A search was conducted on April 17, 2005.

Lt. McCullough testified that between the April 8 traffic stop and the April 15 search warrant application, he had spoken to other officers, advising them what he had found, and was informed those items might be involved in the manufacture of methamphetamine. He did not state what these particular items were in his search warrant, and testified he did not know exactly how these items would be used to manufacture meth. His only knowledge came from his contact with the DEA officer and State Police officer and some training, but he did not mention this in his affidavit or to the County Magistrate Judge from whom he obtained the search warrant. He testified the suspect items he had found in the first search were too numerous to list on his affidavit, and he did not enumerate them.

Lt. McCullough also testified the truck was kept in the Grafton tow yard between the date it was impounded and the date of the second search. He did not observe the vehicle the entire time it was in the impound lot, nor, to his knowledge, did any other officer. He had told those in charge of the impound lot to be sure the vehicle was secure, however, and testified the vehicle was covered in a tarp until the second search.

**Contentions of the Parties**

## A. March 18, 2005 search.

The decision of the Court in this case as to whether to suppress or not suppress the evidence and the fruits of the evidence seized during the warrantless search of defendant's vehicle on March 18, 2005, rises and falls upon whether Defendant gave consent to the police to search and whether he had the capacity to give consent to the police to search. Defendant contends the warrantless search of his vehicle on March 18, 2005, was without his consent. Defendant argues there is no written consent signed by Defendant or any audio or video tape of the traffic stop. He further argues there is no report of his physical or mental condition besides Lt. McCullough's statement that he was "very nervous."

The Government argues Defendant consented to the search, the consent was valid, and there is no law requiring a consent to search to be in writing, signed or video or audio taped.

Whether consent to search was given is a factual issue to be determined by this Court in light of all the circumstances. United States v. Mendenhall, 446 U.S. 544, 557, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980). United States v. Vickers, 387 F.2d 703 (4th Cir. 1967) citing Channel v. United States, 285 F.2d 217 (4th Cir. 1960), United States v. Rusher, 966 F.2d 868 (4th Cir. 1992). That factual determination will not be disturbed unless it is clearly erroneous. United States v. Gordon, 895 F.2d 923, 938 (4th Cir). The government bears the burden of proving consent was given for the search. United States v. Vickers, supra, citing Wren v. United States, 352 F.2d 617 (10th Cir. 1965). The undersigned agrees with the Government, that there is no requirement the consent be in writing, signed or recorded by video or audio tape.

The voluntariness of consent to search is a factual question to be determined in light of the totality of the circumstances, and should be upheld unless clearly erroneous. United States v.

Gordon, 895 F.2d 932, 938 (4th Cir.) cert. denied 111 S.Ct. 131 (1990). A consent to search is valid if the government can "demonstrate the consent was, in fact, voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). As in the issue of whether consent was given at all, the determination of whether a consent to search is valid is based upon the "totality of the circumstances." Id. at 227.

From the totality of the circumstances recited above the undersigned concludes Defendant did consent to the search of his vehicle. The undersigned further finds the credible evidence indicates that Defendant was not coerced or under duress when he gave his consent, and his consent was knowing and voluntary. The evidence seized in this search is therefore admissible.

### B. The April 17, 2005 Search

Defendant next contends the evidence obtained during the April 17, 2005 search should be suppressed because:

1. The evidence obtained during that search is the "fruit of the poisonous tree;" that is, the result of the March 18, 2005 search;

2. The warrant and supporting affidavit are patently void; and

3. The vehicle was sitting at the tow yard, presumably a non-secure facility and, at any rate, a facility that was not within the control of Defendant.

The government argues:

1. Lt. McCullough had limited knowledge of meth operations. He therefore left some items in the vehicle and consulted with officers with more knowledge before searching again;

2. After other officers, such as the State Police and DEA officer, advised Lt. McCullough that some of the items he described were meth precursors, he obtained a search warrant for the

6

vehicle;

3. Nevertheless, a search warrant was not necessary because the vehicle was already in police custody. After receiving information that the items were evidence of a crime, the police had a duty to seize the items.

Because the undersigned has already found the March 18, 2005 search was conducted pursuant to a knowing, voluntary consent, the second search is not invalid based on the "fruits of the poisonous tree."

Defendant argues the warrant and affidavit in support are void because the factual basis for the warrant was Lt. McCullough's statement that "located inside the vehicle were items that may be used in the manufacturing and use of methamphetamine." Those items were not listed in the affidavit, and Lt. McCullough has admitted he had "limited knowledge of Meth operations" and believed that some of the items he recovered in the first search "may be used in some way in the manufacturing of this drug." Finally, the affidavit concludes with the statement that the West Virginia State Police requested a search warrant be obtained.

In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. United States v. Blackwood, 913 F.2d139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review but instead limits itself to the information presented to the magistrate who issued the warrant. Id. See also United States v. Wilhelm, 80 F. 3d. 116, 118 (4th Cir. 1996).

The determination of whether the State Magistrate had probable cause to issue the warrant

to search the vehicle is made by answering the question: From a totality of the circumstances presented to the issuing judge, was there "a fair probability that contraband or evidence of a crime" would be found in the mobile homes? Illinois v. Gates, 462 U.S. 213, 238 (1983).

In United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422, 82 L.Ed 2d 677 (1984), the United States Supreme Court held there is a "good faith" exception to the exclusionary rule. The undersigned will look first to the "good faith" exception and, if this exception is inapplicable, then to a determination of whether or not there was probable cause to support the warrant. This approach was approved by the United States Supreme Court in Leon,[1] and by the Fourth Circuit in United States v. Bynum, 293 F.3d 192 (4th Cir. 2002) ("Assuming without deciding that no probable cause supported the warrant, we will proceed 'immediately to a consideration of the officers' good faith.'") (citing Leon); United States v. Legg, 18 F.3d 240 (4th Cir. 1994)("We turn first to consideration of the good faith exception.").

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561

---

[1] If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice. Leon at 925, 104 S. Ct. at 3421-3422.

(1974). In Leon, the Supreme Court explained the reason for rule. "First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." 468 U.S. 897, 915, 104 S. Ct. 3405, 3417.

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 918, 104 S. Ct. 3405, 3419. The Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922, 104 S. Ct. 3405, 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to the issue of suppression of evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. 3405, 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

9

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

The undersigned does not find any of the four situations which would make the good faith exception inapplicable existing in this case. There is no allegation that anything Lt. McCullough said in his affidavit was false or misleading. There is also no indication that the State Magistrate "wholly abandoned his detached and neutral judicial role." Further, a review of the affidavit does not indicate it "was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable." As grounds for the search, Lt. McCullough stated simply that

10

"on 3/5/05 Donald Bowman was operating the above vehicle when stopped for defective tail lights. The vehicle was not legally registered nor did it have insurance. Also located inside the vehicle were items that may be used in the manufacturing and use of methamphetamine . . . ." This is not a case of a "bare bones" affidavit, relying on anonymous informants.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others  - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996).

Defendant argues that Lt. McCullough failed to list any of the items seized, and further failed to name the officers that advised him that the items were used in the manufacture of methamphetamine. Lt. McCullough testified at the Motions hearing that he found items during the first, consensual, search of the vehicle that were not usually found during a traffic stop. He testified he found an aquarium pump wrapped in duct tape, lithium batteries wrapped in tape, syringes, surgical scissors, spoons, and medical tubing, among other things. None of these items is listed on the affidavit in support of the search warrant. Lt. McCullough also testified that, although his knowledge of methamphetamine manufacture was limited, a West Virginia State Trooper and a DEA officer advised him that the items he found in the vehicle during the consent search were the used in the manufacture of methamphetamine. He did not, however, mention either officer in his affidavit. In Bynum, the Fourth Circuit discussed the situation where information known to the affiant was omitted from his affidavit:

> If the district court relied on the absence of this information in refusing to apply *Leon's* good faith exception, that reliance was in error. When, as here, the affidavit itself provides information not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," a court should not refuse to

11

apply the *Leon* good faith exception just because the officer fails to include in that affidavit all of the information known to him *supporting* a finding of probable cause.

Bynum, 293 F.3d at 199 (internal citations omitted) (emphasis in original).

Finally, the warrant was not "so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid." The affidavit states with particularity the vehicle to be searched and the items to be seized.

For all the above reasons, the undersigned finds the officers' reliance on the search warrant issued by the State magistrate was objectively reasonable. The good faith exception therefore renders the evidence seized in the search admissible, even if the search warrant lacked probable cause.

There is also no evidence presented and no reason to believe the vehicle was not secured, as Lt. McCullough testified he requested, in the impound yard until the time of the second search.

Having found the evidence admissible, the undersigned does not address the merits of the parties' remaining contentions.

## **RECOMMENDATION**

For the reasons herein stated, it is **RECOMMENDED** that Defendant's Motions To Suppress Physical Evidence [Docket Entry 63] be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and

recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 19th day of September, 2005.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE